case 1340 52 sister Michael Marie v. American Red Cross at all Ross County Emergency Management Agency at all arguments not to exceed 15 minutes for plaintiffs 15 minutes to be shared by defendants Mr. Blackburn for the appellant may please the court counsel the issue in this case is whether volunteers who are discriminated against or claim to be discriminated against by a state agency and by a national charity chartered by the US government to maintain a system of disaster relief and to assist and coordinate disaster relief with overwhelmed state agencies in their disaster services whether such volunteers have any legal recourse against such claims discrimination more simply put it's kind of a case that determines where we are in this country in regard to protecting people from discrimination there's two main what there's many issues in this case there's two main provisions for providing this protection in this case title 7 section 1983 title 7 provides shortly did an unlawful employment practice for an employer it is an unlawful employment practice for employer to discharge any individual or otherwise discriminate and on against an individual with respect to his privileges of employment because of such person limited to employment though right yes if somebody was discriminated against very badly by a by the government but it wasn't employment and title 7 wouldn't apply what a ordinary dictionary meaning of employment is to engage one services it's not to engage one services and to pay them these these two organizations one the the Ross County emergency management agency had three employees I mean the county actually had multiple employees but they were section they had three paid employees 11 volunteers who discharged their duties American Red Cross has thousands and thousands and thousands of employees that discharged their duties these two defendants American Red Cross and Ross County emergency management agents they engage these individuals to to help them complete their tasks and to say that you're not an employee there's no definition of employee or employment or employer under title 7 and to say that because you're not paid you can't have protection that but you you started out saying the issue here is whether volunteer agencies can can discriminate against people and I guess yes under title 7 they can as long as they're not employees right and so we just have to figure out whether they're employees yes your honor and that's the issue is what is an employee can a volunteer be an employer employee and my contention is that they clearly can be I mean when you're using volunteers to accomplish your task to accomplish everything you're set up to do and to say that oh but we can discriminate against those volunteers while we can't discriminate against those paid employees when there is no provision in title 7 it says they have to be paid the courts have developed some tests and the courts originally started developing these tests with the economic realities they then became the common law agency test and for some reason the courts got stuck on payment and compensation but this court in Bryson said to be sure we're going to look at all the factors we're going to look at the factors under the factual situation involved in the occupations of the people involved. Bryson's a case that's the conundrum in these cases is that Bryson focuses on the difference between independent contractors and employees and it does reach the issue in Bryson ultimately of volunteers I suppose that's the case that says volunteers are going to use these five these factors under the under but that doesn't really fit that well does it you know in a volunteer context well if you start looking at the Darden factors and you think well how does that at all relate in some ways to well it doesn't actually relate unless you do what the Bryson court said we're going to look at each of these factors under this factual situation and looking at the occupations involved because there is case law that says you can ignore these factors or want to get more of factors and in a case of a volunteer you wouldn't expect compensation to be a factor or at least a very important factor. Doesn't that bring us in this circuit though back to the economic realities kind of analysis in which remuneration is really important? If you're looking at between trying to determine whether it's an independent contractor or a paid employee yes economic realities are important but also in the context of a volunteer economic realities are important and the economic realities are they're not paid but they work just like the employees work it's through them that these two agencies accomplish their tasks they say taxpayer dollars in the case of Ross County and they say numerous I mean thousands and thousands and thousands of dollars for American Red Cross and that's how they can get their tasks accomplished through these volunteers. They don't really work like paid employees do because these sisters picked and choose when they were going to work I think one of them said they were going to work one day a week and the you know the having the discretion of showing up when you want to is is something that volunteers have that employees don't isn't it? Well that's what your clients that's what when they wanted to. If an employee said I want to work when I want to they wouldn't be there very long and the same thing happened to the sisters they weren't there very long not because they wanted to work whenever they were wanted to it was when they were available because they volunteers with other. You say there's no distinction between paid people and volunteers I mean that that is a distinction here that it's just in the facts it's undisputed is it not? That's not that's not disputed that but she also had assigned hours but just like a paid employee if she had assigned hours and didn't show up for it they could terminate her. She did have some hours were set by her based on her availability both the sisters I believe had some assigned hours both of them were available for assignment on disasters and if they didn't show up for a disaster like an employee who was supposed to go to the disaster if he didn't go to it or she didn't go to it they'd probably be terminated and the same thing would have happened to the I'm not going to that disaster I'm not going to this disaster. The thing is I know there's a lot of cases that are cited in the briefs dealing with various tests but what what as a matter of fact is the closest case that supports you that somebody like this was treated by a court as an employee? I think there's several cases and pick one that's the strongest for you. I think Bryson is the What are the facts in that case? Well Bryson is not the facts. I'm asking for the facts. Have a case where there's any kind of factual situation like this? Yes there was. What case would that be? Well I would again say Bryson because of their analysis. What are the facts in that case? Well Bryson was a case and I'm not sure of all the facts in that. But generally was that volunteers? Yes Bryson did handle it. And they found that they were employees? I don't believe they did find they were employees. No they remanded it for for a hearing on it right? Hmm. The panel remanded for termination? Yes. As to the test that they assessed? Yes. So it's really not a very strong hold? Well it is in the sense that how it says you should analyze these cases. I understand my question was about facts. Okay thank you. Well what is your strongest case where a factual scenario somewhat like this the to be? Well that was my question. Yeah I'd like to have an answer. Okay and I'm not sure if there are any cases said they were found to be. Okay is that significant there are no cases? Well there that's because all the cases are based on the facts and you can't say that there will never be a case where the facts don't justify a volunteer being found an employee. You would think somewhere there would be a case? There's there's only a handful of cases out there. This issue has not been addressed by a lot of courts. All right well how many how many of the circuits differ with our test of Bryson? How many how many circuits go the other way and require remuneration as a prerequisite? Well I think your court was the first one that said remuneration shall not be a precedent to being able to recover. Yeah how many circuits have held that exact number but there's probably been three or four and I may be wrong on that. I think there might be more than that. Okay. You have some arguments that are in addition to the employment argument. You don't agree that if they're not employees you lose right? You have other arguments? Yes I mean. Did you proceed to those? The other arguments is under section 1983. I think they can recover under section 1983. Now American Red Cross asserts that it is not did not act under color of state law but basically it did everything states do at disasters. They go in they're called in by the state agency. It's not like a private school is also acting under color of state law because they provide education like public schools do. They're not asked by state agencies to provide that. In this case state agencies ask American Red Cross to come in and help us. We're serving the public in a disaster and we need that's a little bit different from the argument that they're doing what state agencies do right? I thought you were making an argument that because they do what states do they should be treated as the state but you're not you're switching to a different argument that they're acting as sort of agents of the state. Well they're not agents because. Well or acting at the behest of the state. At the behest of the state but they're the ones. That's not a state that's not a state function argument that's a state direction argument right? Well it's sort of a state function argument and. How is it I'm not following that. Because they're performing disaster relief which is a function of the state. Yeah but then I gave the example of the schools and you said well the only way that's different is because they're not being told to do it. I mean private schools do exactly what states do all the time but they're not state actors right? No they're not and that's because they're not asked by the state to do it. Okay so you're really into the state. And you're looking at. Direction are you really into a direction argument rather than a function argument. You're looking at a historical traditional argument I think. And historically disaster relief has been done by governments. It might not have had the agency of the government did it might not have had a name but the governments did disaster relief. In fact it was the US government which chartered the American Red Cross to take over disaster relief for the US government. The US government wouldn't be state law. No it would not be but the American Red Cross was chartered or part of his charter was to assist overwhelmed state agencies in such relief. I ask a question I don't know about my colleagues but you've got the the employment argument and the state law argument but if you assume that that the Red Cross was not acting under state law and you assume that these are not employees which I'm just assuming hypothetically so I can get to the other issues. What's the remaining issue? What is a remaining issue on discovery whether or not an extension. You don't have an argument that that that this Ross County is is is is acting under state law even if even if the Red Cross is not. Well Ross County is a state agency. Okay so what's your argument that even if even if even if the Red Cross is not a state agency you have an argument under Ross County right? Yes. What did the district court do with that argument? They granted summary judgment to Ross County. And why was that wrong? Because according to you. Because under the US Constitution well under title 7 which we've already covered also. But I'm putting aside title 7. I know I said. I'm trying to get you to your third argument you're out of time and it seems to me to be your strongest argument. So they violated the United States Constitution as a governmental entity. What's the you're not arguing anymore on appeal that they violate a procedural due process is that correct? No we're not on appeal. So what's remaining? What's the strongest argument among your constitutional arguments? Unequal protection. Equal protection and what's the showing that there was an equal protection violation here? They treated them differently than similarly situated individuals. They terminated them. They were the only two volunteers who said we want to continue when they when volunteers were asked that you want to continue. They gave a police report. It came out clear. So who was treated differently? They were treated differently because they were the only two fired. From whom? From the other volunteers. They were the only two volunteers fired. And there was a reason given why they were fired. For this or that reason it's not an equal protection violation unless there's. Unless there's. Okay they say you're fired because you wrote us a nasty letter. Right. Right. That's not an equal protection violation. There's no protection. It's not irrational to fire people. Well it's harassment. I thought it was based on their on their on their religion. It is. It's based on their religion. Is that your equal protection argument? Yes. Is there some showing that they treated people differently based on religion? Yes. These were the only two volunteers who were traditional Catholic nuns. No other volunteers were. These were the only two volunteers. They were all in the same. They were all similarly situated and having written letters that said they disapproved. Well they didn't say they disapproved. I'm just trying to get at the strength of your equal protection argument. Well they didn't say they they disapproved. They commented on a provision or a project that had been supported by the agency in the past. The director said they had a right to do that. He expected people to do that. He did say I fired him because of that letter but based on everything else he did, everything else he did to other volunteers, some of whom had criminal backgrounds, who did not get terminated, the court can decide or a jury can decide, remember this was based on a motion for summary judgment, that his reason was pretext. I see your time is up. Thank you. Mr. Blackburn, one additional question. You mentioned that Ross County Emergency Management Agency was granted summary judgment in their favor. You haven't appealed that, have you? Yes, we have. What issue do you appeal? I see issue number three that you appealed that Red Cross and McCord were considered or improperly not considered state actors, but what issue did you appeal as to Ross County? We appealed the granting of summary judgment. What issue? All the issues. No, what issue in your brief do you appeal as to? Oh, in the brief? Yes. I addressed all the issues that Ross County raised. Okay, you want to look at your brief and look at the five issues that you raised and tell me which issue pertains to Ross County. It pertains to Ross County. I assumed it was D. It's not D. Okay. Is it? I'm asking. Well, I will have to find D. You need to find it. Part D of your argument. You list several issues. Maybe on rebuttal you can identify that. Your Honor, it is D. All right. Thank you very much. Have you all divided your argument? Or are you gonna? How are you gonna do this? Yes, I'm gonna take it just a few minutes, six or less minutes. And Council for Ross is gonna take about nine minutes if that's acceptable to the court. Have they been separately allocated? Okay, fine. Go ahead. I may be briefer than that. I just have a few simple points, or at least I think they're simple points I'd like to raise with the court. Number one, Council for the Appellees has not shown the court in any respect any factor which would suggest that these individuals are employees. He cites none in his argument this morning, and he couldn't answer the court's question as to a case that's similar. Number two... Pardon my ignorance. Are you representing the Red Cross? Yes. If I didn't say that, I apologize. You did. I just was thinking of something else. So you're the Red Cross, and you're the state... You're the... Okay. Thank you. Go ahead. Both on the side of the right. I understand. At least I hope so. So, with respect to employment, there's not a single factor which suggests these individuals were employees. In his brief, Council went through and discussed all the documents and statements made by the Appellees and others where they were employed. And he said that they never referred to themselves as employees. And he says that's not determinative. That is powerful evidence, what they said about themselves and what others said about them, in addition to all the legal tests. But the teaching of Bryson, to be fair, is that, at least theoretically, you can be a volunteer and still fall under the protections of Title VII. Theoretically. Okay. So let me ask this question. I'm interested in the argument you made, which is about the relationship between the economic relations test and the Darden factors, which Bryson says in a volunteer context, you should apply those Darden factors. You seem to argue that there's nothing inconsistent about the cases that decided the economic... Using the economic relations test with the Darden factors, that they're, in essence, the same thing. Is that fair? That's fair. What we tried to point out is that, in substance, there's no difference. If you look at the 10 Darden factors and look at Bryson, the result, we believe, would be the same. We're not saying they're identical because, obviously, Darden listed 10 specific factors. And as the court already noted, trying to apply those in a volunteer context really doesn't work very well. Even the Bryson factors don't seem to work that well, I suppose. That's our law. Well, I think that answers the question. They don't work well because anything you would look at in a normal context to decide if someone was an employee versus a volunteer clearly indicates that they were volunteers and not employees. Indeed, we say, and I think this is true, that if you held that these individuals were employees, there's no volunteer in the country who would not automatically not become an employee. There's no factor that you can point to in this circumstance or in any other where a volunteer wouldn't be considered an employee. And that's, as the court already indicated, the essential difference among others is that they set their own schedule. Indeed, they weren't even volunteering. The testified that she had stopped coming to the Red Cross in November of 2008, a year before their status was terminated as volunteers. And that appears at pages 15, 12, and 15, 13 of her deposition. So you have really two individuals who are not even volunteering, who are contending that they're employees, and they clearly were not. So with respect to that issue, there's no factor which would indicate to the court that they were employees. With respect to the 1983 claim, counsel indicated... We went through, in our brief, all the three tests that the courts normally apply. He says that they aren't the exclusive tests, but he doesn't cite or give the court any basis for any other test which would classify the Red Cross as a state actor. So that claim fails. Are you aware of any case in which the Red Cross has been classified as a state actor? No. No. And unfortunately, there have been a lot of cases when you're a not for profit organization like the Red Cross, you become a target of a lot of different suits. And this is a good example where someone... I won't characterize it. This is a good example of where the Red Cross is a target of what we believe is a frivolous suit. With respect to the Bivens claim, which counsel didn't mention, he says, well, you don't have to use that word. Fine. But he doesn't point to anything in the amended complaint which gave the Red Cross notice of the claim. And finally, with respect to the... How about as a... Well, there are people who claim it, but there's no case which holds it. Finally, with respect to the discovery, counsel is incorrect. Counsel didn't even initiate discovery in this case until 22 days before the first discovery cut off. Counsel asked for and got two extensions of the discovery period. The third request wasn't even opposed by the Red Cross, but the court said, enough. And the district judge has... The magistrate judge and the district judge upheld that ruling, said enough is enough. The case must be finally concluded. So for all the reasons set forth in our brief, we ask the court to affirm. Thank you very much for your time. Thank you, counsel. May it please the court. My name is Jeff Stankunas. I am the attorney for the Ross County EMA, as well as its director, David Bethel. You don't argue that that's not a state actor? I do not argue that it's not a state actor, but I do point out that it's a political subdivision of the state of Ohio. It's a county, so it's been referred to as the state. There is a state EMA. That's something completely different, but I agree, Your Honor, for purposes of 1983... You're not making any of those 1983, are you? No, no. Thank you. If I could address Mr. Blackburn's argument that the sisters accomplished a lot as volunteers, and let me first ask you to remember that the Red Cross and the sisters' relationship with the Red Cross is completely separate from their relationship with the Ross County EMA. And so often, the sisters, in their brief, they kind of mix the two together, or refer to Red Cross and EMA at the same time, and we ask you to keep in mind that they were two completely different relationships. That's for purposes of the employment argument. Correct. And for example, at page 23 and 30 of their brief, and you heard it today at oral argument, there's an allegation that they had a specific work schedule at ARC and Ross County EMA. But when you go to the deposition sites that support that argument, that's 873 and 1431, you'll find that that testimony was specific with regard to the Red Cross, not the Ross County. I'd like to argue with the indulgence of my colleagues, I'd like you to address the non employment arguments that are asserted against you. It seems to me that if something is a state actor and it discriminates outside of employment, there might still in all nonetheless be a 1983 claim. For instance, the example that jumps to my mind, you have these adopt a highway programs, and if you said anybody can adopt a mile of the highway except people of this religion, that wouldn't be employment, but it would be probably a constitutional violation, wouldn't it? Correct, Your Honor. Ross... Why isn't there something like that going on here? That's my question. Right. Because seemingly the argument is you, a government agency, are saying we're gonna deal with people except traditional Catholics. That's their claim, right? That is the claim. And why is that worthy of summary judgment in this case? Well, it failed upon the merits because there was no evidence to support such a claim, Your Honor. So that's the basis for the... There's no sort of threshold argument, it's just that there's not enough evidence of those violations. With the exception of the Bivens argument. Correct, Your Honor. Correct. So if I could address the evidence on that. Please. The only evidence in the record from the plaintiffs about a motive against traditional Catholics is the sister's testimony that in 2003, when Mr. Bethel became the director, remember the sisters were volunteering well before he became the director. The allegation was that they told him that they are not with the diocese and they claimed that he responded, I know a lot about you, more than you realize, period. That's it. There's no other evidence with regard to their religion or Mr. Bethel's feelings concerning their religion. What about the fact that they're from different religions and that the reason for discontinuing them seems slight or ephemeral? Is that just not enough? Well, Your Honor... What was the reason? It doesn't seem like much reason to turn volunteers away. Well, the reason was, as Mr. Bethel testified, when he sent the letters to all of the volunteers, none of whom had been doing much for years, to ask if they were still interested in volunteering and if they would do a background check. These people said, yes, we're interested. He did. He sent a separate letter that said they would not be sponsoring anything at the Ross County Fair, the annual fair anymore. And so some volunteers didn't respond. Some responded and said they didn't wanna be volunteers and some, including the plaintiffs, said that they did. Only the plaintiffs are unique in that they issued the two page letter, which was critical of Mr. Bethel. It was critical on the first page when it talks about the several offers to do training that he's not taken them up on. But moreover, on the second page, the second to the last paragraph, they're very critical of his decisions and they compare him negatively twice in that paragraph to his predecessors. So, Your Honor, if the test was, was this a good reason or a bad reason to terminate their volunteer employment? Perhaps some people might say that's not enough, but... That's not the test, but it might go to whether a jury could believe that something else was going on, if it was flimsy enough. Well, they've not, first of all, satisfied pointing to somebody who is similarly situated to them because none of the other volunteers were critical. So I would suggest that the court need not get to whether the reason given was pretextual or not. But wouldn't there be some situations where the reason is so frivolous that you'd say there was no reason? I mean, you could have that if they said, well, you wrote your answer on blue paper, so we're not going to renew you. That would make the inference that something else was going on stronger, wouldn't it? Well, I would... Logically? I believe that you have to find that there's a reason to believe that it's not the reason given and instead it's the different discriminatory reason and there's just simply no evidence of any ill will or animosity with regard to the plaintiff's religion. And quite frankly, not much evidence that Mr. Bethel even understood the difference between Catholics and traditional Catholics. Again, it's all based solely on their claim that they said, you're aware we're not with the diocese, and he said, I know a lot about you. Again, six years before he made the decision to terminate their volunteer status. Basically saying there's not enough that a reasonable juror could come to the conclusion there's discrimination. Correct. No reasonable jury could find that. Further questions? No. Thank you, counsel. Thank you very much. And we ask you to affirm the decision of the district court with regard to the Ross County Appalachians. Thank you. You have rebuttal time? Yes, Your Honor. Just a couple points. First of all, the letter started out with, of course, we wish to be listed as volunteers with Ross County Emergency Management Agency in the event of an emergency. That is what we have been preparing for as volunteers over the past 10 years. Sister Michael Marie and 15 years sister Mary Cabrini. And this has been the objective and motivation and all our training we have taken. We also would like to assist in planning and other proactive measures if we have done with your two predecessors. Under the Reeves case, I think they have a right to take this issue to a jury because a jury certainly has a right to disbelieve the pretext that Mr. Bethel gave for firing them based on everything else. The other thing regarding discovery and just real quick on it. We did start discovery late. It was an unusual case. There was a motion to dismiss. There was a motion to I think was called a motion to partially dismiss. Had not been ruled upon. Uh, so who was the judge that made this decision? Um, and I'm drawing a mental blank. That's all right. Okay. Um, what we took issue with was as we did get an extension for discovery, although it was limited and they said, well, we're gonna limit you to certain depositions. We didn't get all the discovery right up against. There were times when we next two months. Can I take these depositions? None of those people were provided. Did you file a motion to compel discovery? We did file a motion to compel. We filed a we filed notices of depositions. Our motion to compel was ruled moot once the court granted an extension. But then the same thing happened again. Uh, we the reason why there was a consent agreement to try to get one last continuance. It was because the Red Cross hadn't produced the people. They said they were produced, and I think they were afraid to appeal the denial of your motion to compel discovery. I mean, you you've you've appealed the refusal to extend discovery. But have you? No, we do not. Because at the time, I'll emotion to compel. No, we did not. Because why? Why not? Because at the time there was an extension granted, and we thought we were gonna get those people produced. The other thing was, we found out in depositions taken days before the the deadline. We didn't get all the documents. Two different witnesses said we have documents, yeah, but we didn't give them to you. That was what our, uh, our problem with discovery was. While I was upset with the fact that the court limited us, what I'm more upset about is we didn't get what we asked for. And discovery, you're supposed to look at cases are to be decided on their merits. You look at the fairness of everything, and the court has taken it upon itself to say, look, because you started it so late, you're at fault. You're at fault. You're at fault. You're at fault. It doesn't say anything about them not providing people for witnesses and not providing all their, uh, documents. Appreciate your argument. Case will be submitted. Please call the next case.